IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**CHRISTOPHER COLLINS**                                                                 **PLAINTIFF**

**V.**                               **CASE NO. 5:24-CV-5122**

**CITY OF LOWELL, ARKANSAS**                                                            **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Christopher Collins was employed in the City of Lowell, Arkansas's ("the City") police department from September 25, 2017 until December 13, 2023, when his supervisor informed him that his position was being eliminated. Mr. Collins filed this lawsuit against the City in Benton County Circuit Court, alleging that his firing violated article 2 of the Arkansas Constitution (which provides similar speech protections to those provided by the First Amendment to the United States Constitution), as well as the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). *See* Doc. 3. The City removed the lawsuit to this Court, invoking this Court's federal-question jurisdiction under 28 U.S.C. § 1331, as the FMLA is a federal statute. *See* Doc. 2. After the parties completed discovery, the City moved for summary judgment, arguing that all of Mr. Collins's claims should be dismissed with prejudice. *See* Doc. 18. That Motion has been fully briefed and is now ripe for decision.[1] For the reasons given below, the City's Motion

---

[1] The Court has also considered the City's Brief in Support (Doc. 22) and Statement of Undisputed Material Facts (Doc. 20); Plaintiff Christopher Collins's Response in Opposition (Doc. 23), Response to Defendant's Statement of Undisputed Material Facts (Doc. 24), and Brief in Support of his Response (Doc. 25); and the City's Reply (Doc. 26).

1

is **GRANTED IN PART AND DENIED IN PART**.  Counts 1 and 2 of Mr. Collins's Complaint are **DISMISSED WITH PREJUDICE**, but Count 3 will proceed to trial.

## I.     LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Nat'l Bank of Com. of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir 1999) (quoting Fed. R. Civ. P. 56).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).  The moving party bears the burden of proving the absence of any material factual disputes and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

## II.     DISCUSSION

Mr. Collins's Complaint asserts three separate counts.  Count 1 is for the City's alleged violation of his right to consult and petition under article 2, section 4 of the Arkansas Constitution.  Count 2 is for the City's alleged violation of his right to freely communicate his thoughts and opinions under article 2, section 6 of the Arkansas

Constitution.  And Count 3 is for the City's alleged violation of his rights under the FMLA.  Below, the Court will first discuss Mr. Collins's constitutional claims.  Then the Court will address his FMLA claim.

### A.  Counts 1 and 2, Ark. Const. Art. 2

The Arkansas Civil Rights Act ("ACRA") provides that anyone who deprives a person of his rights under the Arkansas Constitution "shall be liable to the party injured in an action . . . for legal and equitable relief or other proper redress."  *See* Ark. Code Ann. § 16-123-105(a).  The ACRA is analogous to the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, which provides a similar statutory vehicle for redress of violations of the federal Constitution; and thus the ACRA explicitly states that courts "may look for guidance to state and federal decisions interpreting . . . 42 U.S.C. § 1983" when they are construing the ACRA.  *See* Ark. Code Ann. § 16-123-105(c).  Similarly, and as noted above, article 2 of the Arkansas Constitution and the First Amendment to the United States Constitution provide analogous protections for speech.  Accordingly, claims for violations of speech rights under article 2 are analyzed under the same standards as those governing First Amendment violations.  *See McCullough v. Univ. of Ark. for Med. Sci.*, 559 F.3d 855, 865 (8th Cir. 2009).  This discussion, then, will extensively reference § 1983 and First Amendment caselaw, given the relative abundance of cases interpreting those authorities.

Mr. Collins claims that the City retaliated against him for engaging in two distinct but related acts of speech, which form the bases for his two distinct constitutional claims.  Both concern advocacy he undertook regarding the issue of officer pay.  According to his Complaint, in 2023 Mr. Collins conducted a survey of wages paid by area law enforcement

agencies and learned that that members of the City's police department were paid lower wages than those of other local law enforcement agencies. *See* Doc. 3, ¶¶ 9, 12. This survey was not a task that was assigned to Mr. Collins in the course of his employment, but rather was something he undertook on his own initiative to address what he perceived as low morale among members of the City's police department. *See id.* at ¶ 9. He communicated the results of his survey to Chief of Police Tim Kuth, among others, on October 31, 2023. *See id.* at ¶ 13. This is the first expressive act for which Mr. Collins claims the City retaliated against him. On November 17, 2023, Chief Kuth reassigned Mr. Collins from his day-shift position as a detective to a night-shift position as a patrol officer; Mr. Collins claims that Chief Kuth gave him no explanation for this reassignment. *See id.* at ¶ 15.

On December 12, 2023, Mr. Collins spoke with a City Council member, Bill Adams, against whom Mr. Collins alleges Chief Kuth held a grudge. *See id.* at ¶ 19. Mr. Collins "had earlier discussed his work on the wage survey with this Council member and had expressed to the Council member his belief that he had been assigned to the patrol division as retaliation for developing the wage survey." *Id.* This is the second expressive act for which Mr. Collins claims the City retaliated against him. The next day, he received a phone call from his supervisor, who informed Mr. Collins that he was being fired but would not tell him a reason why. *See id.* at ¶ 20.

As noted above, Count 1 of Mr. Collins's Complaint alleges a violation of his right to petition, while Count 2 alleges a violation of his right to free speech. The United States Supreme Court has explained that "the right to speak and the right to petition are cognate rights," elaborating:

> Both speech and petition are integral to the democratic process, although not necessarily in the same way. The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs. Beyond the political sphere, both speech and petition advance personal expression, although the right to petition is generally concerned with expression directed to the government seeking redress of a grievance.

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011).

However, although the rights to speech and petition differ in these nuanced ways, the same framework applies to both of them when a public employee alleges that his employer infringed these rights by retaliating against him for exercising them. Specifically:

> If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases. When a public employee petitions as a citizen on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs. If that balance favors the public employee, the employee's First Amendment claim will be sustained. If the interference with the government's operations is such that the balance favors the employer, the employee's First Amendment claim will fail even though the petition is on a matter of public concern.

*Id.* at 398 (internal citations omitted).

The City puts forward a variety of reasons why they contend his speech and petition claims should be dismissed with prejudice, but the most fundamental reason is that, they argue, Mr. Collins's speech and petition did not enjoy any constitutional protection in the first place because they were not made on matters of public concern. As the Eighth Circuit has explained:

> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of the speech, and the speech must relate to some matter of political, social or other concern to the

> community. When a public employee's speech is purely job-related, her speech will not be deemed a matter of public concern. Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment. It is not enough that the topic of an employee's speech is one in which the public might have an interest. We must determine whether the purpose of the speech was to raise issues of public concern or to further the employee's private interests.

*Sparr v. Ward*, 306 F.3d 589, 594 (8th Cir. 2002) (internal citations and quotation marks omitted).

The facts of *Sparr*, the case just quoted, are analogous in many significant ways to those of the instant matter, such that this Court believes *Sparr* essentially dictates the outcome here. Barbara Sparr was employed in the Pulaski County, Arkansas Assessor's office as an administrative assistant to both the County Assessor, B.A. McIntosh, and the Chief Deputy Assessor, Janet Ward. *Id.* at 591. Mr. McIntosh decided to retire, and Ms. Ward began an electoral campaign to take his place. *Id.* Ms. Ward promised Ms. Sparr that if she won the election, then she would promote Ms. Sparr to Chief Deputy Assessor. *Id.* Although Ms. Sparr initially supported Ms. Ward's candidacy, she eventually changed her mind and advised Ms. Ward of this in a memorandum. *Id.* The memorandum contained some politely worded but nevertheless harsh criticism of Ms. Ward's management style. *Id.* at n.1. Before giving it to Ms. Ward, Ms. Sparr showed the memorandum to Mr. McIntosh, who encouraged her to give it to Ms. Ward but instructed her not to provide a copy to the office's Personnel Director. *Id.* at 592. But Ms. Sparr gave a copy to the Personnel Director anyway, as well as to Ms. Ward. *Id.* Mr. McIntosh learned that Ms. Sparr had given a copy to the Personnel Director, and fired her the next day. *Id.*

In *Sparr,* the Eighth Circuit ultimately held that Ms. Sparr's actions could not be fairly characterized as constituting speech on a matter of public concern, for two reasons. First, although her memorandum contained matters that "could be of concern to the public," it was motivated primarily by her self-interest as an employee. *See id.* at 594–95. Second, the record contained no evidence that Ms. Sparr ever intended to bring the memorandum's contents into the public eye before her employment was terminated. *See id.* at 595. Therefore, her speech did not enjoy First Amendment protection. *See id.* at 596.

To be clear, there are times when a public employee's statement may be on a matter of public concern even when the statement is purely private, and must accordingly receive First Amendment protection. *See Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979). But in such situations, the statement typically is not motivated by the speaker's self-interest as an employee. So, for example, in *Rankin v. McPherson*, the United States Supreme Court held that a county clerical employee's private statement regarding her opinions on the policies of the Presidential administration was made on a matter of public concern. *See* 483 U.S. 378, 386 (1987). But when an employee's purely internal statement is motivated at least in part by his self-interest as an employee, then "the internal nature of [the employee]'s speech is a factor to be considered" along with the speech's content to determine whether his self-interest as an employee outweighed his interest as a citizen commenting on matters of public concern when making the statement. *See Sparr,* 306 F.3d at 595.

Here, as in *Sparr*, Mr. Collins was fired after (1) providing a supervisor with a memo which contained constructive criticism about the workplace, and (2) discussing the matter

7

with another party who the supervisor preferred that he not discuss it with. In each case, the memorandum discussed matters that pertained to the plaintiff's job (Ms. Sparr's unwillingness to accept the position of Chief Deputy Assessor; the wages paid to Mr. Collins and his coworkers) but that also were at least arguably matters of public concern (the suitability of an electoral candidate for the position she sought; problems retaining staff on the police force). But, in this case as in *Sparr*, Mr. Collins has not presented any evidence showing that he intended to bring his wage survey's contents into the public eye. Quite the opposite, in fact: in a grievance he filed after his termination, Mr. Collins stated that the goal of his wage survey "was to simply provide information to the command staff of the Lowell Police Department so we could be better informed to move forward in a sensible manner that could be both fiscally responsible and provide a boost to lagging morale." (Doc. 20-13, p. 2). Later in the same grievance, Mr. Collins stated that "[t]he wage survey was an effort to collect data, make the command staff and administration aware of the numbers to then be able to make informed decisions, and then potentially use the information to better inform the City Council about the growing gap in wages for critical public safety personnel compared to other municipalities . . . ." *Id.* at 5. Similarly, the grievance form explains that in Mr. Collins's conversations with Councilmember Adams, he simply advised the latter of the wage survey's findings, and that he had been reassigned to night patrol in retaliation for his work on the wage survey. *See id.* at 5–6.

Simply put, the evidence in the record uniformly indicates that Mr. Collins only ever intended to discuss the wage survey and retaliation with City employees and policymakers who had the authority to take action upon these matters—not with members of the general public. Viewing this fact in context with the wage survey's contents, the

8

Court finds as a matter of law that Mr. Collins' speech actions here, however laudable his motives may have been, were nevertheless motivated primarily by his interest as an employee in his workplace and his job security rather than by his interest as a citizen commenting on matters of public concern. Accordingly, his communications were not entitled to constitutional protection, and Counts 1 and 2 of his Complaint must be dismissed with prejudice.

### B. Count 3, FMLA

In addition to his claims that he was fired in retaliation for his work on the wage survey, Mr. Collins also alleges that he was fired so that the City could avoid fulfilling its obligation under the FMLA to give him leave for cancer treatment. On November 29, 2023, Mr. Collins emailed his supervisor, with the human resources director copied, to inform them that "in the next couple of months" he would need to receive treatment for a recurrence of cancer. *See* Doc. 23-19, pp. 1–2. In that email, Mr. Collins recalled that when he went through a similar treatment several years earlier he "didn't miss much work then" and that he was "hoping for something similar" this time as well. *See id.* The human resources director responded with FMLA paperwork attached, explaining "I understand you don't anticipate missing much work, but this is still an FMLA qualifying event." *See id.* Mr. Collins was fired fourteen days later, on December 13, 2023.

"The FMLA was designed to protect, in relevant part, the reasonable medical needs of employees with serious health conditions within the limits set by the employer's legitimate interest in managing its business." *Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 786 (8th Cir. 2009). It "entitles employees to take twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements."

*Boston v. TrialCard, Inc.*, 75 F.4th 861, 868 (8th Cir. 2023) (citing U.S.C. § 2612(a)(1)). The Eighth Circuit has explained that there are three types of claims arising under the FMLA:

> (1) where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act (an entitlement or interference claim); (2) where an employee opposes any practice made unlawful under the FMLA and the employer retaliates against the employee (a retaliation claim); and (3) where an employer takes adverse action against an employee because the employee exercises rights to which she is entitled under the FMLA (a discrimination claim).

*Id.*

Mr. Collins's Complaint does not specify which type(s) of FLMA claim he is bringing. *See* Doc. 3, ¶¶ 29–32. The City's Motion seems to assume Mr. Collins's FMLA claim is for retaliation; or, in any event, that is the type of FMLA claim around which the Motion frames its arguments.[2] *See* Doc. 22, p. 16. However, in Mr. Collins's deposition, he (and counsel for the City) framed his FMLA claim as one for discrimination, based on indirect rather than direct evidence. *See* Doc. 23-5, p. 3 (internally numbered as pp. 23:1–25:14). For purposes of this Opinion and Order it makes no difference whether Mr. Collins's claim is for retaliation or discrimination (or entitlement, or interference, or any combination of these) because the City's arguments on summary judgment apply with equal force (or lack thereof) to any type of FMLA claim.

---

[2] Somewhat confusingly, although Section III.B of the City's Motion is entitled "Collins's Termination was for Legitimate Reasons, Not FMLA Retaliation," that Section concludes with the assertion that "the City could not have discriminated against Collins, interfered with his right to take leave, or denied any FMLA right," and that therefore "there is no basis for Collins's claim of FMLA retaliation, discrimination, or interference." *See* Doc. 22, p. 17.

The City advances two arguments for dismissing Mr. Collins's FMLA claim. First, the City contends that Mr. Collins never provided proper notice of his need for FMLA benefits. Second, the City maintains that his firing was for legitimate reasons, and not related to his health issues.

Regarding notice, it is well-settled that in order to trigger an employer's duties under the FMLA an employee must give notice of their need for FMLA leave, but that "the employee need not explicitly assert rights under the FMLA or even mention the FMLA"; rather, "the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 471 (8th Cir. 2007). That obviously occurred here. As already mentioned above, Mr. Collins informed his supervisor and the human resources director via email of his potential upcoming need for medical leave, and the human resources director responded by informing him that this was an FMLA-qualifying event and provided him with FMLA forms to fill out. *See* Doc. 23-19. The City maintains that Chief Kuth was not yet personally aware of Mr. Collins's potential need for medical leave at the time of his firing. But Mr. Collins's supervisor testified in his deposition that he is "sure" that he told Chief Kuth that Mr. Collins was planning to take medical leave, though he could not recall the date and time when he did so. *See* Doc. 23-7, p. 3 (internally numbered as pp. 26:18–26:24). At a minimum, then, there is a material dispute of fact on this point, and a jury could reasonably infer from this evidence that Chief Kuth in fact was aware of Mr. Collins's medical situation at the time of his firing.

Regarding the reason for Mr. Collins's firing: "[w]hether characterized as a 'discrimination' claim under § 2615(a)(1), or as a 'retaliation' claim under § 2615(a)(2), [courts] require proof of the employer's discriminatory intent." *Corkrean v. Drake Univ.*, 55 F.4th 623, 630 (8th Cir. 2022). "Such proof may come from direct evidence or indirect evidence using the *McDonnell Douglas* burden-shifting framework." *Id.* (internal quotation marks omitted) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)). As already noted, Mr. Collins conceded in his deposition that his FMLA claim is based only on indirect evidence. Under the *McDonnell Douglas* framework:

> To establish a prima facie case of FMLA discrimination, an employee must show: (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action. If the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its challenged actions. The employee may then demonstrate that the proffered reason is pretextual, showing that the employer's proffered explanation is unworthy of credence or persuading the court that a prohibited reason more likely motivated the employer. If an employer bases its decision on an honestly-held belief unrelated to the FMLA, it is nondiscriminatory even if that belief is mistaken.

*Hudson v. Tyson Fresh Meats, Inc.*, 787 F.3d 861, 866 (8th Cir. 2015) (internal alterations, quotation marks, and citations omitted).

Mr. Collins can easily establish a *prima facie* case here. He informed his employer of his potential need for medical leave (a protected act), and he was terminated two weeks later (an adverse action). And the Eighth Circuit has specifically held that a period of two weeks between the protected activity and adverse action at issue "is sufficient, but barely so, to establish causation" for purposes of a *prima facie* case. *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002). Chief Kuth, for his part, testified in his deposition that he fired Mr. Collins for "insubordination," because Mr. Collins "was saying

that I was lying about not supporting [line officers] or helping them with wages." *See* Doc. 20-5, pp. 13–14 (internally numbered as 35:19–36:4); *see also id.* at 15–16 (internally numbered as 38:19–39:10).  Thus the burden shifts back to Mr. Collins to show that this reason is pretextual.

> An employee may prove pretext by:
>
> demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006).  Mr. Collins has provided evidence of several of these things, which is sufficient to create a jury question on the issue of pretext.

Evidence of shifting explanations includes the fact that at the time of his firing Mr. Collins was not given any reason for his termination, *see* Doc. 23-7, p. 3 (internally numbered as pp. 28:4–28:12), and that after his termination the police department informed the Arkansas Division on Law Enforcement Standards and Training that Mr. Collins was "Terminated for Non-Disciplinary Reasons," *see* Doc. 23-26.  Chief Kuth conceded in his deposition that he never counseled or had any discussion at all with Mr. Collins about the reason for his firing before terminating his employment.  *See* Doc. 23-6, pp. 8–9 (internally numbered as pp. 36:10–38:3).  Mr. Collins has placed into the record the "only formal annual evaluation available to Plaintiff," (Doc. 24, ¶ 4.B), from the year 2021, which rates him as "exceeds expectations" in every category and which contains glowing praise of his performance throughout, *see generally* Doc. 23-13.

Chief Kuth also conceded that he did not conduct any investigation into the allegations that Mr. Collins called him a liar before firing him. *See id.* at 9 (internally numbered as pp. 38:4–39:14). However, the Lowell Police Department Policy & Procedures Manual requires investigations to be conducted into allegations of employee misconduct before disciplinary measures are taken, and provides procedures to be followed in such investigations. *See* Doc. 23-12, pp. 6–9, § 24. Mr. Collins testified that he had extensive experience on internal investigations for prior allegations of employee misconduct, and that to his knowledge he was the first person ever fired from the police department without having first been counseled about his alleged misconduct or given a performance improvement plan or having been the subject of a formal investigation. *See* Doc. 23-5, pp. 9–11 (internally numbered as 49:25–54:23). He provided several specific examples of department employees who were accused of much worse misconduct than his own alleged misconduct and who were formally investigated before disciplinary action was taken against them. *See id.* Finally, Mr. Collins denies that he ever called Chief Kuth a liar; and, as noted above, Mr. Collins's supervisor has testified that he informed Chief Kuth of Mr. Collins's potential need for medical leave before the firing. A jury could reasonably infer from all of this that the City's proffered reason for firing Mr. Collins was pretextual. Therefore, summary judgment on Mr. Collins's FMLA claim is inappropriate.

### III.     CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant City of Lowell, Arkansas's Motion for Summary Judgment (Doc. 18) is **GRANTED IN PART AND DENIED IN PART**. Counts 1 and 2 of Plaintiff Christopher Collins's Complaint (Doc. 3) are **DISMISSED WITH PREJUDICE**. Count 3 will be set for trial.

**IT IS SO ORDERED** this 1st day of May, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE